UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

Vedder Software Group Ltd.,

                          Plaintiff,

v.                                              1:11-CV-00369
                                                (GTS/CFH)
Insurance Services Offices, Inc.; Xactware, Inc.;
Liberty Mutual Holding Company Inc.; Liberty
Mutual Group Inc.; Liberty Mutual Ins. Co.; and
Liberty Mutual Fire Ins. Co.,

                          Defendants.
_____

APPEARANCES:                          OF COUNSEL:

FEENEY, CENTI AND MACKEY              DANIEL J. CENTI, ESQ.
   Counsel for Plaintiff
116 Great Oaks Boulevard
Albany, NY 12203

WHITEMAN OSTERMAN & HANNA LLP         CHRISTOPHER W. MEYER, ESQ.
   Counsel for Defendants, Ins. Srvcs. Office,
   Inc. and Xactware, Inc.
One Commerce Plaza
Suite 1900
Albany, NY 12260

DAVIS POLK & WARDWELL LLP             GINA CARUSO, ESQ.
   Counsel for Defendants, Ins. Srvcs. Office,   JOEL M. COHEN, ESQ.
   Inc. and Xactware, Inc.
26th Floor, Room 2630
450 Lexington Avenue
New York, NY 10017

HISCOCK & BARCLAY, LLP                DAVID M. COST, ESQ.
   Counsel for Liberty Mutual Defendants
50 beaver Street
Fifth Floor
Albany, NY 12207

KORNSTEIN VEISZ WEXLER & POLLARD,        KEVIN FEE, ESQ.
  LLP
  Counsel for Liberty Mutual Defendants
757 Third Avenue
New York, NY 10017


GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

Currently before the Court, in this antitrust and trademark infringement action filed by

plaintiff, Vedder Software Group Ltd. ("Plaintiff") against defendants, Insurance Services

Office, Inc. ("ISO"); Xactware, Inc. ("Xactware"); and the following entities which shall

hereinafter be referred to as Liberty Mutual: Liberty Mutual Holding Company Inc., Liberty

Mutual Group Inc., Liberty Mutual Insurance Company, and Liberty Mutual Fire Insurance

Company (collectively, "Defendants"), is Defendants' joint motion to dismiss the Amended

Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No.  23.)[1]  For the reasons set forth below,

Defendants' motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Amended Complaint

Generally, liberally construed, Plaintiff's Amended Complaint asserts the following

claims against Defendants: (1) unlawful agreements or acts of boycott, coercion and

intimidation; (2) violation of the Donnelly Act, N.Y. GEN. BUS. LAW § 340; (3) unlawful

---

[1]    This action was removed to this Court from New York State Supreme Court, Albany County.  Thereafter, Defendants filed their first motion to dismiss the complaint.  (*See* Dkt. No. 15.)  Before filing their memorandum of law in opposition to Defendants' motion to dismiss, Plaintiff amended its complaint.  Thereafter, Defendants filed a motion to dismiss the amended complaint.  (*See* Dkt. No. 23.)  The parties agree that Defendants' first motion to dismiss is moot because Plaintiff's amended complaint supersedes its original complaint "in its entirety for all purposes."  (Dkt. No. 23-1, at 2 (citing *Coleman v. City of Syracuse*, No. 5:09-CV-1391, 2011 WL 13808, at *1 (N.D.N.Y. Jan. 4, 2011) [Defs.' Joint Mem. of Law, at 2 n.1].)  (*See also* Dkt. No. 25, at 1 [Pl.'s Mem. of Law].)  Accordingly, Defendants' first motion to dismiss is denied as moot.

interference with prospective economic advantage; (4) unfair competition; (5) unjust enrichment; (6) violation of § 43(a) of the Lanham Act; (7) unlawful passing off or palming off; (8) deceptive acts or practices in violation of N.Y. GEN. BUS. LAW § 349; and (9) misappropriation. (*See generally* Dkt. No. 19 [Am. Compl.].)

Generally, in support of these claims, Plaintiff alleges as follows:

Liberty Mutual is a diversified global insurer and one of the largest property and casualty insurers in the United States. Liberty Mutual and a large group of insurance companies (hereinafter referred to as "Shareholder Insurance Companies") as a group control the vast majority of insurance business in the United States. Liberty Mutual and the Shareholder Insurance Companies, which are competitors with Liberty Mutual and among themselves in, among other things, the sale of insurance policies, own controlling stock in Verisk Analytics, Inc. ("Verisk"). ISO, which wholly owns Xactware, is wholly owned by Verisk.

ISO is in the business of, among other things, providing statistical, actuarial and underwriting information for the property/casualty insurance and risk management industries. Xactware is in the business of providing a computer software estimating system with databases for the property/casualty insurance industry, which software is known as Xactimate.

Plaintiff is in the business of, among other things, providing computer software estimating systems for the casualty insurance industry. Plaintiff owns and licenses one such system called the Estimating Wizard. Xactimate and the Estimating Wizard are competing products in the same market, which is defined as businesses that are engaged nationally in estimating property/casualty losses, including independent adjusting companies, insurance repair contractors, insurance mitigation companies, and public adjusting companies.

According to Plaintiff,

> Xactware has monopolized the market and/or restrained competition in the market, by the [D]efendants' conspiracy, agreement, and concerted action, past and continuing, among themselves and the Shareholder Insurance Companies, as follows: the Shareholder Insurance Companies have communicated to customers and prospective customers of [P]laintiff, and of other vendors in the market, that to obtain or retain their business, including the business of estimating purchased or used by the Shareholder Insurance Companies, such customers or prospective customers must use Xactimate, and not the Estimating Wizard or any other product competitive with Xactimate; additionally, the Shareholder Insurance Companies, including . . . Liberty Mutual . . . have required all vendors with whom they do business in the market to use Xactanalysis for the electronic transmission of data from and to Xactimate, which effectively excludes the use of the Estimating Wizard or any other product competitive with Xactimate.

(Dkt. No. 19, at ¶ 18 [Am. Compl.].) "Defendants are thereby using their market power to demand, pressure and coerce entities that are in the business of estimating casualty losses to use Xactimate and not the Estimating Wizard or any other product competitive with Xactimate." (*Id.* at ¶ 28.) As a result of Defendants' conduct, which has caused Xactimate to be used by more than eighty-five percent of users in the market, Plaintiff and other competitors in the market have been injured.[2] Defendants' conduct constitutes "unlawful agreements or acts of boycott, coercion and intimidation." (*Id.* at ¶ 24.)

Liberty Mutual and the Shareholder Insurance Companies "have accomplished and continue to accomplish the systematic underpayment of claims due to the use of Xactimate, and additionally, the enrichment of themselves through their financial interest in and control of [] ISO and Xactware." (*Id.* at ¶ 22.)

---

[2]    Plaintiff has identified a list, which is not exhaustive, of nine of its customers that have "left [P]laintiff due to" Defendants' conduct. (Dkt. No. 19, at ¶ 19 [Am. Compl.].)

"[A]ll of [D]efendants' acts were committed knowingly, willfully, with malice and in bad faith." (*Id.* at ¶ 23.)

"In addition . . . , [Defendants have sought . . . to facilitate the monopolization and restraint of trade in the market in favor of [] Xactware by [] Xactware intentionally simulating the interface, appearance or trade dress of the Estimating Wizard in producing Xactimate." (*Id.* at ¶ 43.) The Estimating Wizard possesses secondary meaning because "for several years [it has] possessed a distinctive interface, containing non-functional elements which, taken as a whole, create a distinctive visual impression upon [its] purchasers or users." (*Id.* at ¶ 44.) Alternatively, Xactware's intentional copying of the Estimating Wizard has reduced its distinctiveness.

The elements that have been intentionally copied by Xactware, which "combine to give the Estimating Wizard a certain look and feel, presenting to the user unique screen displays, with particular structures for moving and manipulating data and program flow," are:

> the front end estimate/management screen; main estimate entry
> screen; Excel and Word integration; attached photographs; form and
> reports; the items feature unique to the Estimating Wizard; method
> to add items to database from estimate screen and changing of prices;
> global price changes application to estimate; changes to roof entries;
> changes to waste and labor factors; re-sequencing of line orders in
> estimates; addition of profit and overhead to line items; addition of
> formulas and the calculator methods; [and the] graphics screen.

(*Id.* at ¶¶ 46-47.) Defendants conduct "has caused or is likely to cause confusion or mistake or deception as to the affiliation, connection or association of Xactimate and the Estimating Wizard, and thus [] Xactware and [P]laintiff, or as to the origin, sponsorship, or approval of such products, services, or commercial activities of said parties." (*Id.* at ¶ 48.)

Familiarity with the remaining factual allegations supporting Plaintiff's claims is assumed in this Decision and Order, which is intended primarily for review by the parties. (*See generally* Dkt. No. 19.)

**B.    Defendants' Motion**

Generally, in support of their motion to dismiss, Defendants argue as follows: (1) Plaintiff fails to plead a Donnelly Act claim or a claim for boycott, coercion, and intimidation because it (a) fails to allege facts plausibly suggesting a conspiracy, (b) alleges nothing more than parallel conduct, (c) fails to allege facts plausibly suggesting an unlawful restraint of trade, (d) fails to link its claimed injury to an antitrust violation, and (e) fails to allege facts plausibly supporting a claim for boycott, coercion and intimidation; (2) Plaintiff fails to plead a claim under § 43(a) of the Lanham Act because it fails to allege facts plausibly suggesting a claim for (a) trade dress infringement, (b) false designation of origin or (c) "passing off or palming off"; (3) Plaintiff fails to plead a claim for unfair competition for the same reason it fails to plead a claim under § 43(a) of the Lanham Act and because it fails to plead facts plausibly suggesting Defendants' bad faith; (4) Plaintiff's purported claim for misappropriation is an element of its Lanham Act and unfair competition claims and is therefore duplicative; (5) Plaintiff fails to plead a claim under GEN. BUS. LAW  § 349 because it fails to allege facts plausibly suggesting (a) any materially misleading act or practice, (b) consumer-oriented conduct or (c) injury to public health or safety; (6) Plaintiff fails to plead a claim for tortious interference because it fails to allege facts plausibly suggesting Defendants acted intentionally to sever Plaintiff's relationships with its customers, instead relying on conclusory allegations; and (7) Plaintiff fails to plead a claim for unjust enrichment because it fails to allege what Defendants unjustly gained or how that gain was at Plaintiff's expense.  (*See generally* Dkt. No. 23-1 [Defs.' Mem. of Law].)

Generally in response to Defendants' motion to dismiss, Plaintiff argues as follows: (1) Plaintiff alleges specific factual allegations plausibly suggesting conspiracy in support of its claims under the Donnelly Act and §1 of the Sherman Act; (2) Plaintiff alleges a monopoly claim under § 2 of the Sherman Act, which does not require a conspiracy; (3) Plaintiff

adequately alleges the elements of its claim for interference with prospective economic

advantage or relations; (4) Plaintiff's unfair competition claim is not coextensive with its

Lanham Act claim because it does not derive solely from Plaintiff's claim of intentional copying,

which is "only part of the criminal conspiracy alleged"; (5) Plaintiff has stated a cause of action

for unjust enrichment; (6) Plaintiff has sufficiently alleged a claim under § 43(a) of the Lanham

Act because it has alleged (a) the character and scope of the claimed trade dress, (b) that the

elements Defendants copied are non-functional, (c) Defendants' conduct is likely to cause

confusion in the market and (d) Defendants have engaged in this conduct to facilitate

monopolization or restraint of trade in the market; (7) Plaintiff has alleged specific factual

allegations in support of its claim for passing off or palming off under New York law; (8)

Plaintiff has sufficiently alleged facts plausibly suggesting a claim for violation of GEN. BUS.

LAW § 349; and (9) Plaintiff's misappropriation claim is not duplicative of its other claims

because it incorporates the entire criminal scheme of Defendants to misappropriate Plaintiff's

estimating software.  (*See generally* Dkt. No.  25 [Pl.'s Opp'n Mem. of Law].)

Generally, in their reply, Defendants argue as follows: (1) Plaintiff fails to allege facts

plausibly suggesting a conspiracy; (2) Plaintiff cannot amend its complaint by arguing in its

motion papers that it alleges claims for a non-conspiracy monopoly and a vertical conspiracy; (3)

even if Plaintiff asserted such claims in its Amended Complaint, it fails to plead facts plausibly

suggesting such claims; (4) Plaintiff's Lanham Act claim for trade dress infringement fails

because (a) Plaintiff fails to allege the character and scope of its trade dress, (b) Plaintiff fails to

plead that the trade dress is non-functional, (c) Plaintiff fails to plead secondary meaning, and (d)

Plaintiff fails to plead a likelihood of confusion; (5) Plaintiff's passing off claim fails because it

fails to allege that Defendants sold their product under Plaintiff's name in order to capitalize on

Plaintiff's goodwill; (6) Plaintiff's claim for tortious interference with business relations fails

because it fails to plead specific allegations of Defendants' knowledge of Plaintiff's business

relationship with which they allegedly interfered; (7) Plaintiff's unfair competition claim fails

because its Lanham Act claim fails; (8) Plaintiff fails to state a claim for unjust enrichment; (9)

Plaintiff fails to state a claim under GEN. BUS. LAW § 349, and Plaintiff lacks standing to assert

such a claim on behalf of homeowners or persons receiving an underpayment of claims; and (10)

Plaintiff's purported claim for misappropriation is merely an element of its defective claim for

unfair competition.  (*See generally* Dkt. No. 27 [Defs.' Reply Mem. of Law].)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motions to Dismiss

For the sake of brevity, the Court will not recite, in this Decision and Order, the well-

known legal standard governing dismissals for failure to state a claim pursuant to Fed. R. Civ. P.

12(b)(6), but will direct the reader to the Court's decision in *Wade v. Tiffin Motorhomes, Inc.*,

686 F. Supp. 2d 174, 181-84 (N.D.N.Y.) (Suddaby, J.).  The Court would only add the following

standard particular to Sherman Act antitrust conspiracy claims.

Specifically, under Section 1 of the Sherman Act, "[e]very contract, combination . . . or

conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is

. . . illegal." 15 U.S.C. § 1.  The determinative question is whether the challenged conduct is the

result of an independent decision, or an agreement, either express or implied.  *Starr v. Sony BMG

Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (citing *Theatre Enters., Inc. v. Paramount Film

Distrib. Corp.*, 346 U.S. 537, 540 (1954)).   "The ultimate existence of an 'agreement' under

antitrust law, however, is a legal conclusion, not a factual allegation." *Mayor and City Council

of Baltimore, MD, v. Citigroup, Inc.*, — F.3d —, —. 2013 WL 791397, at *4 (2d Cir. 2013)

(quoting *Starr*, 592 F.3d at 319, n.2).  Therefore, in order to survive a motion to dismiss, the plaintiff may either provide direct evidence of an agreement, or circumstantial facts supporting the inference that a conspiracy existed.  *See id.*

Conclusory assertions of conspiracy coupled with allegations of parallel conduct are insufficient to state a Section 1 Sherman Act violation.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556, 127 S. Ct. 1955, 1966 (2007).  Instead, if a plaintiff alleges parallel conduct, it must also show the existence of "plus factors," which would lead a fact finder to infer conspiracy.  *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 253-54 (2d Cir. 1987).  "These 'plus factors' may include: a common motive to conspire, evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators, and evidence of a high level of interfirm communications."  *Mayor and City Council of Baltimore, MD*, 2013 WL 791397 at *12 (quoting *Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 114 (2d Cir. 2005)).

Generally, examples of a parallel conduct allegations that would suffice under this standard include "parallel behavior that would probably not result from chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by an advance understanding among the parties."  *Twombly*, 550 U.S. at 556, n. 4, 127 S. Ct. at 1965, (citation omitted).

**B.    Legal Standards Governing Plaintiff's Claims**

**1.    Sherman Act**

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States...." 15 U.S.C. § 1.  Section 2 of the Sherman Act provides that "[e]very person who shall monopolize,

or attempt to monopolize, or combine or conspire with any person or persons, to monopolize any part of the trade or commerce among the several States ... shall be deemed guilty of a felony." 15 U.S.C. § 2.  Consequently, § 1 prohibits concerted action in restraint of trade, while § 2 covers both concerted and unilateral action, but only if it monopolizes or threatens actual monopolization.  *See Am. Needle, Inc. v. Nat'l Football League*, — U.S. —, —, 130 S. Ct. 2201, 2208 (2010).

Under the McCarran-Ferguson Act, the business of insurance is immune from antitrust liability under the Sherman Act except in the case of an act of boycott, coercion or intimidation.  *See* 15 U.S.C. §§ 1012(b); 1013(b).

In any event, "[a] private plaintiff seeking to state a claim for violation of sections 1 or 2 of the Sherman Act must allege that it has suffered 'antitrust injury.'"  *George Haug Co., Inc. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 139 (2d Cir. 1998) (citing *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344, 110 S .Ct. 1884, 109 (1990)).  Thus, a plaintiff seeking to state a claim under either sections 1 or 2 of the Sherman Act must "demonstrate, as a threshold matter, 'that the challenged action has had an actual adverse effect on competition as a whole in the relevant market; to prove it has been harmed as an individual competitor will not suffice.'"  *George Haug Co.*, 148 F.3d at 139 (quoting *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assoc.*, 996 F.2d 537, 543 (2d Cir.1993)).  This is because "[t]he antitrust laws ... were enacted for 'the protection of competition, not competitors.'"  *Id.* (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488, 97 S. Ct. 690 (1977)).

Once this threshold requirement is met, in order to state a claim under § 1 of the Sherman Act a plaintiff must allege "a combination or concerted action between at least two entities that unreasonably restrains interstate or foreign commerce."  *In re European Rail Pass Antitrust*

*Litigation*, 166 F. Supp. 2d 836, 840 (S.D.N.Y. 2001) (citing *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 95-96 (2d Cir.1998). In order to state a claim for monopolization under § 2 of the Sherman Act, a plaintiff "must allege '(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *In re Crude Oil Commodity Futures Litigation*, — F. Supp. 2d —, —, 2012 WL 6645728, at *5 (S.D.N.Y. 2012) (quoting *PepsiCo, Inc. v. Coca–Cola Co.*, 315 F.3d 101, 105 (2d Cir.2002) (per curiam) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71, 86 S. Ct. 1698 (1966))). In addition, in order to state a claim under either section 1 or section 2 of the Sherman Act, a plaintiff must allege "a relevant geographic and product market in which trade was unreasonably restrained or monopolized." *Navarra v. Marlborough Gallery, Inc.*, 820 F. Supp. 2d 477, 485 (S.D.N.Y. 2011). This requires a showing of the interchangeability of use of the relevant products, which exists "where 'one product is roughly equivalent to another for the use to which it is put.'" *Navarra*, 820 F. Supp. 2d at 486 (quoting *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 237-38 (2d Cir.2008)).

### 2.    Donnelly Act

The Donnelly Act, N.Y. GEN. BUS. LAW § 340, is New York's antitrust statute, which was modeled on the Sherman Act. *See State v. Mobil Oil Corp.*, 38 N.Y.2d 460, 381 N.Y.S.2d 426, 344 N.E.2d 357, 359 (1976) (noting that Donnelly Act "has been considered to have been modeled after the Sherman Act"). "A party asserting a violation of the Donnelly Act must (1) identify the relevant product market, (2) describe the nature and effects of the purported conspiracy, (3) allege how the economic impact of that conspiracy is to restrain trade in the

market in question, and (4) show a conspiracy or reciprocal relationship between two or more

entities." *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 370

(S.D.N.Y. 2012) (citation omitted). "The standard for a well-pleaded Donnelly Act claim is the

same as a claim under Section 1 of the Sherman Act." *Nat'l Gear & Piston, Inc*., 861 F. Supp.

2d at 370 (citing *Williams v. Citigroup Inc.*, 659 F.3d 208, 211, n.2 (2d Cir. 2011)).

### 3.    Tortious Interference With Prospective Economic Advantage

In order to state a claim for interference with prospective economic advantage or

relations under New York common law, a plaintiff must allege (1) the plaintiff had business

relations with a third party; (2) the defendants interfered with those business relations; (3) the

defendants acted either with the sole purpose of harming the plaintiff or by means that are

dishonest, unfair, or in any other way improper and (4) the defendants' acts injured the

relationship. *See Scutti Enter., LLC. v. Park Place Entm't Corp*.,  322 F.3d 211, 215 (2d Cir.

2003). *See also Burba v. Rochester Gas & Elec. Corp*., 528 N.Y.S.2d 241, 243, 139 A.D.2d

939, 940 (N.Y. App. Div. 1988). "Interference with a plaintiff's business relations with a third

party can be found if the plaintiff had a reasonable expectancy of a contract with the third party,

which can result from mere negotiations." *Burba*, 528 N.Y.S.2d at 243, 139 A.D.2d at 940

(citation omitted). The New York Court of Appeals has held that "where a suit is based on

interference with a nonbinding relationship, . . .  the defendant's conduct must amount to a crime

or an independent tort . . . to create liability for interference with prospective contracts or other

nonbinding economic relations." *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 3 N.Y.3d 182, 190,

785 N.Y.S.2d 359 (N.Y. 2004) (citing *NBT Bancorp Inc. v Fleet/Norstar Fin. Group, Inc*., 87

N.Y.2d 614, 641 N.Y.S.2d 581 (N.Y. 1996)).

### 4.    Unjust Enrichment

A plaintiff claiming unjust enrichment under New York common law must allege that "(1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendants to make restitution." *Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.*, — F. Supp. 2d —, —, 2012 WL 4714799, at *14 (S.D.N.Y. 2012).  In order to sufficiently state a claim for unjust enrichment, a plaintiff must allege what the defendant unjustly gained and how that gain was at plaintiff's expense.  *See Washington v. Kellwood Co.*, No. 05-CV-10034, 2009 WL 855652, at *11 (S.D.N.Y. Mar. 24, 2009).

### 5.    Lanham Act

Section 43(a) of the Lanham Act provides a right of action against "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof" that "is likely to cause confusion ... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1).  *See also Bulman v. 2BKCO, Inc.*, 882 F. Supp. 2d 551, 558 (S.D.N.Y. 2012); *New York City Triathlon LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 313 (S.D.N.Y. 2010).  Section 43(a) protects both registered and unregistered marks.  *See Bulman*, 882 F. Supp. 2d at 558 (citing *New York City Triathlon*, 704 F. Supp. 2d at 314, n.1).

### a.    Trade Dress Infringement

In order to state a claim for trade dress infringement under 15 U.S.C. § 1125(a) a plaintiff must allege that (1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; (3) there is a likelihood of confusion between the plaintiff's good and the

defendants'; and (4) plaintiff must offer a precise expression of the character and scope of the claimed trade dress. *See Nat'l Lighting Co., Inc. v. Bridge Metal Industr.*, LLC, 601 F. Supp. 2d 556, 560-61 (S.D.N.Y. 2009) (citing, inter alia, *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir.2001)).

### b.    False Designation of Origin

In order to state a claim for false designation of origin under 15 U.S.C. § 1125(a), a plaintiff must allege that it has a valid mark that is entitled to protection, and that the defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods. *See Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir.2003) (citing *Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072 (2d Cir.1993)). A product is entitled to protection where its trade dress is primarily nonfunctional and either possesses secondary meaning or is inherently distinctive. *See Nat'l Lighting Co.*, 601 F. Supp. 2d at 563, n.8 (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767, 112 S. Ct. 2753 (1992)).

Passing off or palming off are merely ways in which origin may be falsely designated. "Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's. Reverse passing off, as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own.*" Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28, n.1, 123 S .Ct. 2041, 2045 (2003). To plead a reverse passing off claim for false designation of origin, a plaintiff must allege: "(1) that the product at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer

confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin."
*Nat'l Lighting Co.*, 601 F. Supp. 2d at 564.

### 6.    Unfair Competition

"The essence of an unfair competition claim in New York state is the bad faith

misappropriation of the labors and expenditures of another, likely to cause confusion or to

deceive purchasers as to the origin of the goods." *Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*,

No. 10-CV-2333, 2013 WL 822173, at *23 (S.D.N.Y. Mar. 6, 2013). "The standard for unfair

competition under New York law is virtually identical to the standard under Section 43(a) of the

Lanham Act." *Bruce Lee Enters.*, 2013 WL 822173 ay *23 (citing, inter alia, *LaChapelle v.

Fenty*, 812 F. Supp. 2d 434, 448-49 (S.D.N.Y. 2011) (dismissing unfair competition claim where

plaintiff had failed to prove case under Section 43(a) of the Lanham Act).

"New York law has long recognized two theories of common-law unfair competition:

palming off and misappropriation. Palming off refers to the sale of the goods of one

manufacturer as those of another, while misappropriation encompasses the principle that one

may not in bad faith misappropriate the results of the skill, expenditures and labor of a

competitor." *Rockland Exposition, Inc. v. Alliance of Automotive Serv. Providers of New Jersey*,

— F. Supp. 2d —, —, 2012 WL 4049958, at *23 (S.D.N.Y. 2012) (citing *ITC Ltd. v. Punchgini,

Inc.*, 880 N.E.2d 852, 858, 9 N.Y.3d 467, 850 N.Y.S.2d 366 (2007)). In order to state a claim of

unfair competition under New York law under either a misappropriation or a palming off theory,

a plaintiff must allege "a likelihood of confusion or deception of the consuming public as to the

source of the allegedly infringing product [or service] *and* bad faith on the part of [d]efendants."

*Rockland Exposition*, 2012 WL 4049958 at *24 (emphasis included). "This extra element of bad

faith differentiates a common law claim for unfair competition from a trademark infringement

claim under the Lanham Act." *Id.* (citing *Empresa Cubana del Tabaco v. Culbro Corp.*, 399

F.3d 462, 485 (2d Cir.2005) ("A plaintiff claiming unfair competition under New York law must

show that the defendant acted in bad faith.").

### 7.    N.Y. General Business Law § 349

Section 349 of the New York General Business Law broadly prohibits "[d]eceptive acts

or practices in the conduct of any business, trade or commerce or in the furnishing of any

service" in New York.  N.Y. GEN. BUS. LAW § 349(a). [A]ny person who has been injured by

reason of any violation of [§ 349] may bring an action" for injunctive or monetary relief.  N.Y.

GEN. BUS. LAW § 349(h).

In order to state a claim under § 349, a plaintiff must allege: "first, that the challenged act

or practice was consumer-oriented; second, that it was misleading in a material way; and third,

that the plaintiff suffered injury as a result of the deceptive act."  *Stutman v. Chemical Bank*, 731

N.E.2d 24, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892 (N.Y. 2000).  The alleged deceptive practice

"must be likely to mislead a reasonable consumer acting reasonably under the circumstances . . .

but need not reach the level of common-law fraud to be actionable."  *Id.*  (citations omitted).   In

addition, a plaintiff must allege "actual injury to recover under the statute, though not necessarily

pecuniary harm" and "that the defendant's material deceptive act caused the injury."  *Id.*

(citations omitted).

Further, it is the majority view in this circuit that trademark infringement claims are not

cognizable under N.Y. GEN. BUS. LAW § 349 unless there is a specific and substantial injury to

the public interest over and above ordinary trademark infringement or dilution.  See *Coach, Inc.*

16

*v. Horizon Trading USA Inc.*, — F. Supp. 2d —, —. 2012 WL 5451274, at *7 (S.D.N.Y. 2012). An allegation that the consuming public has been confused or deceived is not enough to state a claim under § 349 because the "alleged injury—confusion and deception of the consuming public—is not distinct from the very harm that trademark laws generally seek to redress and thus is not over and above ordinary trademark infringement." *Coach, Inc*., 2012 WL 5451274 at *7 (citation omitted).

## III.    ANALYSIS

### A.    Whether the Amended Complaint Includes Claims for "Non-Conspiracy Monopolization" Under § 2 of the Sherman Act

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' reply memorandum of law.  (Dkt. No. 27, at 4-5 [Defs.' Reply Mem. of Law].)  The Court would only add the following brief point.

In its opposition memorandum of law, Plaintiff asserts that it has alleged claims for monopolization and attempted monopolization under § 2 of the Sherman Act, neither of which requires a conspiracy.  For support, Plaintiff cites Paragraph 18 of its Amended Complaint, wherein it alleges that "Defendant Xactware has monopolized the market and/or restrained competition in the market, by the defendants' conspiracy, agreement, and concerted action[.]" (Dkt. No. 19, at ¶ 18 [Am. Compl.].)  Rule 8 of the Federal Rules of Civil Procedure requires that to be sufficient, a complaint must contain a statement of plaintiff's claim that "give[s] the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93-94, 127 S. Ct. 2197,  2200 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47,

78 S. Ct. 99 (1957))).  Paragraph 18 does not give Defendants fair notice of a non-conspiracy

monopolization claim or a non-conspiracy attempted monopolization claim because it alleges

that such monopolization occurred "**by** the defendants' conspiracy, agreement, and concerted

action."  (Dkt. No. 19, at ¶ 18 [Am. Compl.] [emphasis added].)  Although Plaintiff does not

argue that such claims arise elsewhere in the Amended Complaint, to be sure, the remainder of

the allegations in the Amended Complaint do not include statements giving Defendants notice of

a non-conspiracy monopolization claim or attempted monopolization claim.

Accordingly, Plaintiff fails to sufficiently allege claims for non-conspiracy

monopolization and non-conspiracy attempted monopolization under § 2 of the Sherman Act.

### B.    Whether Plaintiff 's Conspiracy Claims Under the Donnelly Act and the Sherman Act Should be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Defendants' memorandum of law in chief and reply memorandum of

law.  (Dkt. No. 23-1 at 4-11 [Defs.' Mem. of Law]; Dkt. No. 27 at 1-4 [Defs.' Reply Mem. of

Law.].)  The Court would only add the following two points.

The law is clear that allegations of conspiracy coupled with allegations of parallel

conduct are insufficient to state a conspiracy claim under the Sherman Act or the Donnelly Act.

*See Twombly*, 550 U.S. at 556, 127 S. Ct. at 1966.  *See also Port Dock & Stone Corp. v.*

*Oldcastle Ne., Inc.*, 507 F.3d 117, 125 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 556-57, 127

S. Ct. at 1966 in context of conspiracy claim under Section 2 of the Sherman Act); *Ambac Assur.*

*Corp. v. Adelanto Pub. Util. Auth.*, No. 09-CV-5087, 2011 WL 5553444, at *3 (S.D.N.Y. Nov.

14, 2011) (procedural matters, such as sufficiency of pleading of state law claims, are decided

under the Federal Rules of Civil Procedure).  Here, Plaintiff's conclusory allegations that

18

"Xactware has monopolized the market and/or restrained competition in the market, by the defendants' conspiracy, agreement, and concerted action . . . among themselves and the Shareholder Insurance Companies" (Dkt. No. 19, at ¶ 18) and that Defendants have engaged in "unlawful agreements or acts of boycott, coercion and intimidation" (Id. at ¶ 24), are legal conclusions and may not be considered as factual allegations in support of Plaintiff's claims.  *See Mayor and City Council of Baltimore, MD*,  2013 WL 791397, at *5 (citing *Twombly*, 550 U.S. at 556-57, 127 S. Ct. at1966).

Plaintiff's remaining allegations do not identify any agreement among the Shareholder Insurance Companies and Defendants.  Instead, Plaintiff alleges that "the Shareholder Insurance Companies have communicated to customers and prospective customers of [P]laintiff" that they must use Xactimate, and not the Estimating Wizard and that the Shareholder Insurance Companies, including Liberty Mutual, have required all vendors with whom they do business to use Xactanalysis for the electronic transmission of data to and from Xactimate, effectively excluding use of Estimating Wizard.  (Dkt. No. 19 at ¶ 18.)  Thus, Plaintiff alleges parallel conduct among the Shareholder Insurance Companies and Liberty Mutual.  The only "plus factor" alleged is that defendants have caused Xactimate to be used by more than eighty-five percent of the market.  However, that allegation in and of itself "fail[s] to plausibly suggest that this parallel conduct flowed from a preceding agreement [among the alleged co-conspirators] rather than from their own business priorities."  *Mayor and City Council of Baltimore, MD*, 2013 WL 791397, at *6.  To be sure, in the case cited by Plaintiff, *Starr v. Sony BMG Music Entm't*, 592 F.3d 314 (2d Cir. 2010), the complaint, which survived a motion to dismiss, included an allegation that the defendants controlled more than eighty percent of the market.

19

However, the complaint in *Starr*, as opposed to the Amended Complaint here, included "very specific allegations about the nature of the defendants' parallel conduct" and "was replete with allegations of plus factor facts that placed the parallel conduct in a context that raised a suggestion of a preceding agreement." *Mayor and City Council of Baltimore, MD*, 2013 WL 791397, at *6 (citing *Starr*, 592 F.3d at 323-24) (alterations omitted). Here, as in *Mayor and City Council of Baltimore, MD*, Plaintiff has "essentially pleaded only parallel conduct, with little more." *Id.*

Plaintiff's allegation that the fact that the Shareholder Insurance Companies and Liberty Mutual own a controlling interest in Verisk somehow creates a de facto conspiracy is misplaced. The cases Plaintiff cites, *North Texas Speciality Physicians v. Fed. Trade Comm'n*, 528 F.3d 346 (5th Cir. 2008) and *Daniel v. Am. Bd. of Emergency Med.*, 802 F. Supp. 912 (W.D.N.Y. 1992) merely support the argument that an association of competitors **may** engage in concerted conduct, as distinct from the actions of officers or employees of a single company who engage in an "internal 'agreement' to implement [that] firm's policies," which is considered unilateral conduct, *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769, 104 S. Ct. 2731, 2740 (1984) (emphasis added).

For these reasons, Plaintiff's claims under the Sherman Act and the Donnelly Act are dismissed.

### C.    Whether Plaintiff's Claim for Tortious Interference With Prospective Economic Advantage Should be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law. (Dkt. No. 23-1 at 22-24 [Defs.' Mem. of Law].) The Court would only add the following point.

As indicated in Point II. B.3. of this Decision and Order, the New York Court of Appeals has held that where, as here, Defendants are accused of interfering with a non-binding relationship, Defendants' conduct must amount to a crime or an independent tort to create liability for interference with prospective economic advantage.  Because the Court has dismissed Plaintiff's conspiracy claims under the Sherman Act and the Donnelly Act, Plaintiff fails to plausibly allege that Defendants' conduct  amounted to a crime or an independent tort.

For these reasons, Plaintiff's claim for tortious interference with prospective economic advantage is dismissed.

**D.    Whether Plaintiff 's Claim for Unjust Enrichment Should be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 23-1 at 24-25 [Defs.' Mem. of Law].)  The Court would only add the following two points.

First, Plaintiff's assertions in support of its claim for unjust enrichment are legal conclusions, not factual allegations.  Second, the factual allegations in the Amended Complaint do not plausibly suggest that under the circumstances, equity and good conscience require Defendants to make restitution.

For these reasons, Plaintiff's claim for unjust enrichment is dismissed.

**E.    Whether Plaintiff's Claims Under Section 43(a) of the Lanham Act Should Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 23-1 at 12-19 [Defs.' Mem. of Law].)  The Court would only add the following points.

First, the assertions in the Amended Complaint that the Estimating Wizard possesses "a distinctive interface, containing non-functional elements which, taken as a whole, create a distinctive visual impression upon purchasers or users thereof, thus possessing secondary meaning" (Dkt. No. 19 at ¶ 44) are legal conclusions and will not be considered as factual allegations in support of Plaintiff's claims. Likewise, the assertions that Defendants' conduct "is likely to cause confusion or mistake or deception as to the affiliation, connection or association of Xactimate and the Estimating Wizard, and thus []Xactware and [P]laintiff, or as to the origin, sponsorship, or approval of such products, or commercial activities of said parties" (Id. at ¶ 48) also contains legal conclusions, not factual allegations. Moreover, the Amended Complaint is devoid of factual allegations plausibly suggesting the first three elements of Plaintiff's claim of trade dress infringement under § 43(a) of the Lanham Act.

In addition, Plaintiff's list of the "non-functional elements" that Defendants are alleged to have intentionally copied does not satisfy the fourth element of its claim for trade dress infringement, which is "a precise expression of the character and scope of the claimed trade dress." *Nat'l Lighting Co.*, 601 F. Supp. 2d at 560-61. These alleged elements include "the front end estimate/management screen; main estimate entry screen; Excel and Word integration; attached photographs; form and reports; the items feature unique to the Estimating Wizard; method to add items to database from estimate screen and changing of prices; global price changes application to estimate; changes to roof entries; changes to waste and labor factors; re-sequencing of line orders in estimates; addition of profit and overhead to line items; addition of formulas and the calculator methods; graphics screen; [and] the estimate line entry screen[.]" (Dkt. No. 19 at ¶ 46.) In order to state a claim for trade dress infringement, a plaintiff must not

22

only allege the specific elements which comprise its distinct dress, but it must specify "*how* they are distinctive." *Heller Inc. v. Design Within Reach, Inc.*, No. 09-CV-1909, 2009 WL 2486054, at *6 (S.D.N.Y. Aug. 14, 2009) (quoting *Shevy Custom Wigs, Inc. v. Aggie Wigs*, No. 06- CV-1657, 2006 WL 3335008, at *5 (E.D.N.Y. Nov.17, 2006) (emphasis in original)).  Here, Plaintiff has merely listed the elements without explaining how they are distinctive.  Accordingly, Plaintiff fails to allege facts plausibly suggesting the existence of the fourth element of its claim for trade dress infringement.

For these same reasons, Plaintiff has also failed to allege facts which plausibly suggest the elements of its claim for false designation of origin.  First, because Plaintiff has not sufficiently alleged facts to plausibly suggest that its trade dress is primarily non-functional, possesses secondary meaning or is inherently distinctive, it has not plausibly suggested that its product is entitled to protection.  Moreover, Plaintiff's conclusory allegation that Defendants' use is likely to cause confusion as to the origin or sponsorship of the Estimating Wizard is (again) a legal conclusion and not a factual assertion.

For these reasons, Plaintiff's claims of trade dress infringement and false designation of origin under § 43(a) of the Lanham Act are dismissed.

### F.    Whether Plaintiff's Claims for Unfair Competition Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 23-1 at 19-21 [Defs.' Mem. of Law].)  The Court would only add the following points.

Plaintiff's claim for unfair competition, which encompasses its claims for misappropriation and passing off or palming off, fails for the same reasons its Lanham Act

claims fail.  Moreover, Plaintiff fails to allege facts plausibly suggesting that Defendants acted in bad faith, which is an additional requirement to state a claim of unfair competition under New York common law.

For these reasons, Plaintiff's claim for unfair competition, which encompasses its claims for misappropriation and passing off or palming off, is dismissed.

### G.    Whether Plaintiff's Claim Under N.Y. General Business Law § 349 Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 23-1 at 21-22 [Defs.' Mem. of Law].)  The Court would only add the following points.

As indicated in Point II.B.7. of this Decision and Order, trademark infringement claims are not cognizable under N.Y. GEN. BUS. LAW § 349 unless there is a specific and substantial injury to the public interest beyond ordinary trademark infringement or dilution, and an allegation that the consuming public has been deceived is not enough to state a claim because the alleged injury is not distinct from the harm that trademark laws seek to redress.  Here, Plaintiff fails to allege any facts plausibly suggesting a specific and substantial harm to the public beyond the alleged deception or confusion that was caused by Defendants' conduct.

For this reason, Plaintiff's N.Y. GEN. BUS. LAW § 349 claim is dismissed.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' first motion to dismiss the Complaint (Dkt. No. 15) is **DENIED AS MOOT**; and it is further

**ORDERED** that Defendants' motion to dismiss the Amended Complaint (Dkt. No. 19) is **GRANTED** in its entirety; and it is further

**ORDERED** that Amended Complaint is **<u>DISMISSED</u>** with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment accordingly.

Dated: March 22, 2013
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge